IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

**HUDSON INSURANCE COMPANY**                                **PLAINTIFF**

v.                     Case No.: 2:21-cv-00053-LPR

**TRIPLE E CONSTRUCTION, INC.,** *et al.*                  **DEFENDANTS**

## ORDER

Plaintiff Hudson Insurance Company sued Defendants Triple E Construction, Inc. and Edward Edwards, Jr. for indemnity and fraud.[1] Defendants have not answered or otherwise responded to Hudson's Verified Complaint, and the time to do so has long since expired. Hudson has moved for a default judgment.[2] For the reasons that follow, the Court GRANTS the Motion for Default Judgment.

## Background

According to Hudson's Complaint, Hudson issues payment and performance bonds for construction projects throughout the United States, including in Arkansas.[3] Separate Defendant Triple E Construction, Inc. "is or was in the business of performing construction work."[4] To bid and work on certain projects, Triple E was required to obtain performance and payment bonds issued by a surety.[5] Triple E sometimes asked Hudson to provide these bonds.[6] The instant case involves two bonds that Hudson issued on behalf of Triple E for a public works construction project in Mississippi.

---

[1] Pl.'s Compl. (Doc. 1).

[2] Pl.'s Mot. for Default J. (Doc. 4).

[3] Pl.'s Compl. (Doc. 1) ¶ 6.

[4] *Id.* ¶ 7.

[5] *Id.* ¶ 8.

[6] *Id.*

As a condition precedent to acting as Triple E's surety, Hudson required Triple E and separate Defendant Edward Edwards, Jr. to sign an Indemnity Agreement.[7] Defendants executed the Indemnity Agreement on May 13, 2014.[8] The Indemnity Agreement says in part:

> [Defendants] shall indemnify [Hudson] against any and all liability, loss, costs, damages, attorney's fees and other expenses which [Hudson] may sustain or incur by reason of or in connection with the issuance, execution, renewal, continuation or replacement of the Bonds, including but not limited to: (a) sums paid or liabilities incurred in connection with the Bonds; (b) expenses paid or incurred in enforcing the terms of this Agreement; (c) sums paid or liabilities incurred in procuring or attempting to procure [Hudson's] release from liability; and[] (d) expenses paid or incurred in recovering or attempting to recover losses or expenses paid or incurred.[9]

Before issuing the bonds for Triple E, Hudson also required Triple E to provide irrevocable letters of credit to American Safety Casualty Insurance Company and Hudson.[10] Triple E "represented that it procured two letters of credit in favor of Hudson."[11] On November 17, 2011, Simmons First Bank of Arkansas purportedly issued Irrevocable Letter of Credit 20, which named American Safety Casualty Insurance Company as the beneficiary in the amount of $20,823.[12] On January 29, 2014, Simmons Bank purportedly issued Irrevocable Letter of Credit 23, which named Hudson as the beneficiary in the amount of $90,753.75.[13] As discussed below, Hudson would later learn that these letters were fraudulent.

---

[7] *Id.* ¶ 9; *see also* Ex. A to Pl.'s Compl. (Doc.1) at 15.

[8] Pl.'s Compl. (Doc. 1) ¶ 10; *see also* Ex. A to Pl.'s Compl. (Doc. 1) at 29–32.

[9] Pl.'s Compl. (Doc. 1) ¶ 12; *see also* Ex. A to Pl.'s Compl. (Doc. 1) at 15–16.

[10] Pl.'s Compl. (Doc. 1) ¶ 15. Hudson explains that "American Safety Casualty Insurance Company was acquired by Hudson, which is the reason one of the irrevocable letters of credit lists American Safety Casualty Insurance Company as the beneficiary." *Id.* n.3.

[11] *Id.* ¶ 16.

[12] *Id.*; *see also* Ex. B to Pl.'s Compl. (Doc. 1) at 34–35.

[13] Pl.'s Compl. (Doc. 1) ¶ 16; *see also* Ex. B to Pl.'s Compl. (Doc. 1) at 36–37.

On June 6, 2018, Hudson issued a payment bond and a performance bond, each numbered 10065042.[14] Triple E was the principal on the bonds, and the Mississippi Soil and Water Conservation Commission was the obligee.[15] "Hudson issued the bonds in connection with Triple E's work on a project identified as 'Tillatoba Creek Peak Stone Dike Site Project, Installation of Rip Rap.'"[16] The amount of each bond was $479,508.75.[17]

Hudson received, investigated, and resolved claims on both bonds.[18] With respect to the payment bond, Hudson paid $302,138.40 to Vulcan Construction Materials, LLC.[19] Triple E owed this amount to Vulcan but failed to pay it. With respect to the performance bond, Triple E's termination from the project required Hudson to enter into agreements with the Mississippi Soil and Water Conservation Commission to complete the project.[20] Hudson procured a contractor that was able to complete the project for less than the amount remaining on the contract price of the project.[21] This resulted in Hudson ultimately receiving $40,098.47 when the project was completed.[22] But Hudson remained $262,039.93 in the hole overall.

Around August 21, 2020, before the project was complete but after Hudson knew it was going to have to make good on the payment and performance bonds, "Hudson sent two letters to Simmons Bank enclosing the sight draft for the full amounts of Irrevocable Letter of Credit Number 20 and Irrevocable Letter of Credit Number 23."[23] On September 5, 2020, Simmons Bank

---

[14] Pl.'s Compl. (Doc. 1) ¶ 17.

[15] *Id.*; *see also* Ex. C to Pl.'s Compl. (Doc. 1) at 39–44.

[16] Pl.'s Compl. (Doc. 1) ¶ 19; *see also* Ex. C to Pl.'s Compl. (Doc. 1) at 39–44.

[17] Pl.'s Compl. (Doc. 1) ¶ 18.

[18] *Id.* ¶ 20.

[19] *Id.* ¶ 21; *see also* Ex. E to Pl.'s Compl. (Doc. 1) at 62–66.

[20] Pl.'s Compl. (Doc. 1) ¶ 22.

[21] *Id.*

[22] *Id.*

[23] *Id.* ¶ 30; *see also* Ex. H to Pl.'s Compl. (Doc. 1) at 75–78.

declined to honor the letters of credit, stating that the letters were fraudulent.[24]  On October 1, 2020, Hudson demanded from Defendants collateral security in the amount of Hudson's current and anticipated future losses in the amount of $480,000.[25]  At this time, it appears that the project was still not complete, and so Hudson did not yet know the full extent of its ultimate obligation.  Having received no response from Defendants, Hudson followed up with another demand on May 4, 2021.[26]  This appears to have been after completion of the project because Hudson's losses are more definite in the demand letter.  This demand sought $263,299.93 for the "loss and expenses [Hudson] incurred due to its having issued the Bonds . . . ."[27]

As of May 13, 2021, Defendants had not responded to Hudson or otherwise fulfilled their obligations under the Indemnity Agreement.[28]  On that date, Hudson filed a Verified Complaint in this Court seeking judgment in the amount of $262,039.93, plus any and all interest owed at law and under the Indemnity Agreement, all of Hudson's attorney's fees, expert fees, and costs incurred in bringing this lawsuit.[29]  Defendants were served with a Summons with the Complaint

---

[24]  Pl.'s Compl. (Doc. 1) ¶ 31; *see also* Ex. I to Pl.'s Compl. (Doc. 1) at 80.

[25]  Pl.'s Compl. (Doc. 1) ¶ 25; *see also* Ex. F to Pl.'s Compl. (Doc. 1) at 68–69.  Hudson derived the $480,000 figure from the amount it had already paid to Vulcan under the payment bond plus anticipated completion costs and other expenses related to the performance bond.  Ex. F to Pl.'s Compl. (Doc. 1) at 68.

[26]  *Id.* ¶ 28; *see also* Ex. G to Pl.'s Compl. (Doc. 1) at 71–72.

[27]  Pl.'s Compl. (Doc. 1) ¶ 28; *see also* Ex. G to Pl.'s Compl. (Doc. 1) at 71–72.  Hudson derived this amount by first adding its payments to Vulcan ($302,138.40) and its costs associated with completion of the project ($144,643), which totaled $446,781.14.  Ex. G to Pl.'s Compl. (Doc. 1) at 71.  Hudson then subtracted from that total the amount it received on the contract price of the project ($183,481.47), which resulted in a net loss of $263,299.93.  In its Verified Complaint and in its Motion for Default Judgment, Hudson lowered this amount by $1,260, an amount for additional costs that Hudson sought in its May 4, 2021 demand letter.  *Id.*; Pl.'s Compl. (Doc. 1) at 12.

[28]  Pl.'s Compl. (Doc. 1) ¶ 29.

[29]  *Id.* at 12.  Hudson alleged various grounds for relief.  Specifically, Hudson made an equitable claim for specific performance.  *Id.* at ¶¶ 32–35.  Hudson sued Defendants for breach of contract and for common law indemnity.  *Id.* ¶¶ 36–48.  Hudson also sued Defendants for attorney's fees and costs.  *Id.* at 49–50.  Finally, Hudson sued Defendants for fraud with respect to the irrevocable letters of credit Defendants purportedly gave to Hudson.  *Id.* ¶¶ 51–56.

attached on May 18, 2021.[30]  Defendants have not filed an answer or other responsive pleading.[31]  On July 12, 2021, Hudson filed a Request for Entry of Default and a Motion for Default Judgment.[32]  In that Motion, Hudson narrowed its request for relief to $262,039.93 (the amount it paid Vulcan minus the amount it received for completing the project).[33]  The Clerk entered default against Defendants on that same date.[34]

## Legal Standard

With regard to default, under Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  A clerk's entry of default under this rule allows the plaintiff to move for default judgment under Rule 55(b).[35]  Under Rule 55(b)(1), the clerk can enter a default judgment if a "plaintiff's claim is for a sum certain or a sum that can be made certain by computation,"[36] such as an amount clearly due under a contract.[37]

---

[30] Proof of Service on Triple E (Doc. 2) at 1–2; Proof of Service on Edward Edwards, Jr. (Doc. 3) at 1–2.

[31] Clerk's Entry of Default (Doc. 5).

[32] Pl.'s Mot. for Default J. (Doc. 4).

[33] *Id.* at 2–3.  Hudson did request that it be awarded attorney's fees and costs associated with any hearing held on its Motion.  Because the Court concludes that a hearing is not necessary, that request is moot.

[34] Clerk's Entry of Default (Doc. 5).

[35] *See Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998) ("When a party has failed to plead or otherwise defend against a pleading listed in Rule 7(a), entry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b).") (citation and internal quotation marks omitted).

[36] FED. R. CIV. P. (55)(b)(1).

[37] *Purity Bakery Bldg. Ltd. P'ship v. Penn-Star Ins. Co.*, No. 11-cv-0094-PJS-AJB, 2011 WL 1324973, at *2 (D. Minn. Apr. 7, 2011) ("Typically, Rule 55(b)(1) is used to collect a specific amount that was due on a specific date under a specific contract, such as the balance due on a student loan."); *see also KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 19–20 (1st Cir. 2003) (collecting cases on the definition of "sum certain"); *Thorpe v. Thorpe*, 364 F.2d 692, 694 (D.C. Cir. 1966) (holding that one half of "the amount of [a] check" was a sum certain for purposes of Rule 55(b)(1)).

Rule 55(b) provides that a default judgment may be entered "against a defendant who has been defaulted for not appearing."[38] The Eighth Circuit "has not articulated specific factors that must be considered in determining whether a Rule 55(b) motion for default judgment for failure to defend should be granted."[39] Federal law does provide that a default judgment cannot be entered against an unrepresented party who is in military service.[40]

"Upon default, the factual allegations of a complaint (except those relating to the amount of damages) are taken as true. . . ."[41] But "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action" before entering a default judgment.[42] "Under Rule 55(b)(2), the Court may hold an evidentiary hearing to determine damages, but a hearing is not required if the amount is ascertainable from definite figures, facts, and evidence provided by plaintiffs."[43]

## Discussion

In this case, the Clerk's entry of default was appropriate. Defendants failed to file an answer or other responsive pleading within twenty-one days of service of the Summons and Complaint,[44] and that failure was shown by affidavit.[45] Hudson's counsel filed an affidavit stating

---

[38] FED. R. CIV. P. 55 (b)(1).

[39] *Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 857 (8th Cir. 1996). The Eighth Circuit has held that failing to appear at hearings and depositions even after filing an answer is "ample basis for a grant of default judgment." *Forsythe v. Hales*, 255 F.3d 487, 490 (8th Cir. 2001) (holding that defendants' "conduct provide[d] ample basis for a grant of default judgment" where defendants had answered the complaint but then "complete[ly] fail[ed] to engage in discovery and fail[ed] to appear at depositions and hearings set by the court").

[40] When a party is in military service, a default judgment may not be entered against that party unless he or she is represented. *See* 50 U.S.C. § 3931(b)(2).

[41] *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010).

[42] *Id.*

[43] *BMO Harris Bank N.A. v. Richland Express, Inc.*, No. 2:17-cv-00149-KGB, 2018 WL 8299883, at *7 (E.D. Ark. Sept 28, 2018); *see also* FED. R. CIV. P. 55(b)(2); *Taylor v. City of Baldwin*, 859 F.2d 1330, 1332–33 (8th Cir. 1988).

[44] Clerk's Entry of Default (Doc. 5).

[45] Ex. A (Hudson's Counsel's Aff.) to Pl.'s Mot. for Default J. (Doc. 4-1) ¶ 4.

that he had conducted a search in compliance with the Servicemembers Civil Relief Act and determined that separate Defendant Edward Edwards, Jr. is not in military service.[46]

Hudson filed the instant Motion for Default Judgment with the necessary supporting documentation (including an affidavit from Hudson's Contract Surety Claims Specialist attesting to the net loss Hudson suffered, the authenticity of the Indemnity Agreement, and the amount of money Hudson paid to Vulcan[47]) and provided notice to Defendants,[48] even though such notice was not required under Rule 55.[49]

Taking Hudson's allegations in the Verified Complaint as true, except for those allegations as to the amount of damages, the Court concludes that the unchallenged facts make out a meritorious claim for breach of the Indemnity Agreement (a contract), that Defendants have breached the Indemnity Agreement, and that Hudson is entitled to default judgment against Defendants. The Indemnity Agreement stated that Defendants would indemnify Hudson against any loss Hudson suffered as a result of the bonds Hudson issued on behalf of Triple E. Under the payment bond Hudson issued on Triple E's behalf, Hudson paid Vulcan $302,138.40, the amount Triple E owed Vulcan. This payment triggered Triple E's indemnity obligation.[50] Hudson notified

---

[46] *Id.* ¶ 5.

[47] Ex. B (Bradham Aff.) to Pl.'s Mot. for Default J. (Doc. 4-2) ¶¶ 4, 5.

[48] Pl.'s Mot. for Default J. (Doc. 4) at 3–4.

[49] The Federal Rules of Civil Procedure require that a non-moving party be served with notice of a motion for default judgment only when the non-moving party has appeared in the case. FED. R. CIV. P. 55(b)(2). Furthermore, the Rules require a clerk to serve notice of an entry of judgment only on parties that are not in default for failing to appear. FED. R. CIV. P. 77(d)(1). The Seventh Circuit, as well as district courts in the Eighth Circuit, has held that parties who default for failure to appear are not entitled to receive notice of a motion for default judgment. *See, e.g.*, *Zuelzke Tool Eng'g Co. v. Anderson Die Castings, Inc.*, 925 F.2d 226, 230–31 (7th Cir. 1991); *Trustees of the St. Paul Elec. Const. Indus. Fringe Benefit Funds v. Martens Elec. Co.*, 485 F. Supp. 2d 1063, 1065 (D. Minn. 2007). Were notice required, an on-point case from a district court in the Fifth Circuit held that the service of notice of a motion for default judgment by mail (as was done in this case) would suffice. *Motown Record Co. v. Murray*, No. CIV.A. 07-0132, 2007 WL 1521475, at *1 (W.D. La. May 21, 2007) ("Defendant has failed to file an answer within the requisite time period. Assuming arguendo that Defendant's Motion for Extension constitutes an 'appearance' within the meaning of Rule 55(b)(2), Plaintiffs provided notice of the pending default judgment by mailing a copy of their Application to Defendant's last known address . . . .") (internal citation omitted).

[50] *See Ray & Sons Masonry Contractors, Inc. v. U.S. Fidelity & Guar. Co.*, 353 Ark. 201, 216, 114 S.W.3d 189, 199

Defendants that it had made expenditures on the payment bond and demanded that Defendants make Hudson whole. Defendants have not responded to Hudson's demand. Defendants have not made any payments to Hudson. Defendants are in breach of the Indemnity Agreement.

Taking the allegations in the Verified Complaint as true, except for those allegations as to the amount of damages, the Court concludes that the unchallenged facts make out a meritorious claim for fraud. The irrevocable letters of credit were fraudulent. By presenting these fraudulent letters of credit to Hudson, Defendants represented to Hudson that Hudson would have collateral in the amount of $111,576.75 should something go south with the bonds. So, Defendants knowingly made a "false representation of material fact."[51] Moreover, Defendants knew that Hudson would not issue bonds on Triple E's behalf without the assurances provided by the letters of credit. It is fair to say that Defendants made the false representation with the intent to induce Hudson into issuing the bonds. The letters of credit appeared legitimate, and thus Hudson's reliance upon them was justified. Finally, Hudson's damages in this case flow in part (probably in whole) from the fraudulent letters of credit. Defendants defrauded Hudson.

---

(2003) ("An indemnitor's obligation to reimburse against loss does not become due until after the indemnitee has paid damages to a third party."); *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, No. 09-cv-3312-PKC-VMS, 2017 WL 1194730, at *12 (E.D.N.Y. Mar. 30, 2017) (applying New York law and stating that "the surety is entitled to indemnification upon proof of payment, unless payment was made in bad faith or was unreasonable in amount . . .") (quoting *Lee v. T.F. DeMilo Corp.*, 815 N.Y.S.2d 700, 702 (N.Y. App. Div. 2006)). The Indemnity Agreement states that it "shall be construed according to the laws of the State of New York . . . ." Ex. A to Pl.'s Compl. (Doc. 1) at 24. In this instance, Arkansas law and New York law are essentially the same, so it does not matter which state's law the Court applies here.

[51] *See Tyson Foods, Inc. v. Davis*, 347 Ark. 566, 580, 66 S.W.3d 568, 577 (2002) (stating that the elements of fraud are: "(1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance"); *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 4 N.Y.2d 403, 406–07 (N.Y. 1958) (stating that the "essential constituents of [fraud] are fixed as representation of a material existing fact, falsity, scienter, deception and injury"). Here, Arkansas law and New York law are essentially the same, so it does not matter which state's law the Court applies.

With respect to damages, a hearing is not necessary. The amount Defendants owe Hudson is ascertainable from definite facts and evidence provided by Hudson. Hudson's Complaint was verified by a Hudson representative.[52] That same representative swore to the veracity of Exhibit E to the Complaint.[53] Exhibit E shows that Hudson wrote two checks to Vulcan totaling $302,138.40.[54] Exhibit E also shows that Vulcan executed two releases, which released Hudson from further liability under Bond 10065042 (the payment bond Hudson issued on the Tillatoba Creek Peak Stone Dike Site Project, Installation of Rip Rap project).[55] Hudson says that it received $40,098.47 after completing the project.[56] The difference between what Hudson paid to Vulcan and what Hudson received upon project completion is $262,039.93. That is the amount of damages Hudson now seeks.[57] The Court awards $262,039.93 to Hudson, plus post-judgment interest in the amount of 0.11%.[58] "Interest shall be computed daily to the date of payment" and "compounded annually."[59]

---

[52] Pl.'s Compl. (Doc. 1) at 13.

[53] Ex. B (Bradham Aff.) to Pl.'s Mot. for Default J. (Doc. 4-2) ¶ 5.

[54] Ex. E to Compl. (Doc. 1) at 65–66.

[55] *Id.* at 62–64.

[56] Pl.'s Compl. (Doc. 1) ¶ 22.

[57] Hudson originally sought additional damages for all of its losses associated with the issuance of the payment and performance bond. Pl.'s Compl. (Doc. 1) at 12. In its Motion for Default Judgment, however, Hudson only seeks the amount it had to pay Vulcan minus the amount it received as a result of completing the project.

[58] *See* 28 U.S.C. § 1961(a) (stating that post-judgment "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment"). The weekly average 1-year constant maturity Treasury yield for the calendar week preceding the date of judgment is 0.11%. BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, (Oct. 21, 2021, 10:30 a.m.), https://www.federalreserve.gov/releases/h15/.

[59] 28 U.S.C. § 1961(b).

## Conclusion

For the foregoing reasons, Hudson's Motion for Default Judgment is GRANTED.

IT IS SO ORDERED this 22nd day of October 2021.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE